UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL PARAMI ANINION,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:24-cv-00243-WBS-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITYAND AGAINST PLAINTIFF**<br><br>**(Doc. 14, 18)** |

## I.    Introduction

Plaintiff Virgil Parami Aninion seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act.[1]

## II.    Factual and Procedural Background

Plaintiff applied for benefits on April 19, 2021 alleging disability as of March 31, 2021 due to valley fever, high cholesterol, asthma, lung disease, and pulmonary issues.  AR 17, 55, 175–76. The Commissioner denied the applications initially on June 22, 2021, and on reconsideration on September 30, 2021.  AR 87–91; 94–100.  The ALJ held a hearing on January 19, 2023.  AR 37–53.  The ALJ issued an unfavorable decision on February 15, 2023.  AR 14–30.  The Appeals Council denied review on December 28, 2023 (AR 1–6) and this appeal followed.

## III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Docs. 4, 12.

error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent

2

to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 31, 2021. AR 19.

At step two the ALJ found that Plaintiff had the following severe impairments: valley fever and asthma. AR 19. The ALJ found that Plaintiff had the following non-severe impairments: diabetes mellitus, hypercholesterolemia, neutropenia, abnormal transaminases, mild obstructive sleep apnea, and acute pharyngitis. AR 20. Finally, the ALJ found that Plaintiff's polyarthralgia was not a medically determinable impairment. *Id.*

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20–21.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of medium work as defined in 20 C.F.R. 404.1567(c) with the following limitations: "The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and must avoid all exposure to temperature extremes." AR 21.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a school bus driver. AR 24–25. At step five, in reliance on the Vocational Expert's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform the following job existing in significant numbers in the national economy: store laborer. AR 25–26. Accordingly, the ALJ concluded that Plaintiff was not disabled since his alleged

1    disability onset date of March 31, 2021.  AR 26.

2        **V.    Issues Presented**

3        Plaintiff asserts one claim of error: that the RFC is not supported by substantial evidence

4    because the ALJ improperly discounted the opinion of Plaintiff's treating physician, Dr. Fadeff.

5    MSJ at 9.

6            **A.    Applicable Law**

7        Before proceeding to steps four and five, the ALJ determines the claimant's residual

8    functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and

9    represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1).  The

10   RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e),

11   416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of

12   the facts and conflicting evidence, stating his interpretation thereof, and making findings."

13   *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

14

15       For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy

16   of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight,

17   including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

18   including those from your medical sources." 20 C.F.R. § 404.1520c(a).  Rather, when evaluating

19   any medical opinion, the regulations provide that the ALJ will consider the factors of supportability,

20   consistency, treatment relationship, specialization and other factors.  20 C.F.R. § 404.1520c(c).

21

22       Supportability and consistency are the two most important factors, and the agency will

23   articulate how the factors of supportability and consistency are considered.  *Id.*  "Even under the

24   new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

25   inconsistent without providing an explanation supported by substantial evidence." *Woods v.*

26   *Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

27

28       With respect to "supportability," the new regulations provide that "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### B.    Analysis

On June 23, 2021, Dr. Fadeff, Plaintiff's treating primary care physician, completed an RFC form ("Medical Source Statement – Physical") (AR 404–407).  Dr. Fadeff noted that Plaintiff had at least quarterly visits with him since 2016.  AR 404.  Dr. Fadeff noted a diagnosis of valley fever, symptoms of fatigue and joint pain, and a supporting finding of permanent lung scarring depicted on CT imaging.  AR 404.  Dr. Fadeff opined that Plaintiff: **1-** could stand/walk 3 hours in an 8-hour workday and sit between 0 and 2 hours; **2-** could frequently lift 10 pounds, occasionally 20 pounds, and never 50 pounds; **3-** could frequently twist and occasionally perform other postural activities; and **4-** would be absent from work about 4 days per month.  AR 405.

Dr. Fadeff completed the same form again on December 14, 2022, identifying additional symptoms of dyspnea on exertion and polyarthralgia, and identifying largely the same exertional and postural limitations as stated above.   AR 464.

To begin, as to the supportability factor, Plaintiff disputes the ALJ's finding that physical exams repeatedly demonstrated normal respiratory findings because "the ALJ failed to recognize that many of the records that he cited as support took place during the COVID-19 pandemic and were telehealth appointments during which abnormal respiratory findings could not have been discovered."  MSJ at 11 (citing AR 24, 430–431, 439–440).

To this point, it is not clear on what basis the physician rendered normal respiratory findings in the context of a zoom visit, but other visits in the same exhibit[2] were conducted in person and similarly noted lungs clear to auscultation bilaterally, normal respiratory effort, no wheezes, rales or rhonchi, and 98-99% oxygen saturation (SP02).  AR 427, 446.   Here, the ALJ noted that at several of these visits Plaintiff reported no shortness of breath.  AR 419, 435, 439, but see AR 426 (intermittent dyspnea), AR 431 (chest tightness and wheezing).  The ALJ further noted that Dr. Fadeff described Plaintiff's asthma as "adequately controlled."  AR 420, 427, 452.

Plaintiff also disputes the ALJ's finding that Dr. Fadeff's opinion was based on "the [claimants] assessment of his abilities."  MSJ at 12, AR 20.  Plaintiff contends that this was a mischaracterization of the record because Dr. Fadeff "clearly referenced objective findings as support including lung scarring demonstrated by CT imaging."  MSJ at 12 (citing AR 404, 463).

Dr. Fadeff's visit notes do state as follows:

> Disability evaluation: Patient brings in paperwork from attorney's office requesting completion. Spent approximately 20 minutes completing forms with patient. Relied on patient's assessment of his abilities. This is not an occupational medicine office. We do not have weights and exercise stations etc, to test patients ability to lift various weights etc. Paperwork was completed to the best of our ability and patient was given original to take to the attorney.

AR 343 (emphasis added).

It is also true that Dr. Fadeff's opinion identified lung scarring on CT imaging as the supporting finding.  AR 404, 464.  However, other than writing the words "chest CT – lung scarring" under supporting clinical findings, Dr. Fadeff did not otherwise explain the connection between the condition depicted in the CT images and his opinion regarding Plaintiff's exertional limitations and absenteeism when he opined that Plaintiff would miss 4 workdays per month.  The opinion provided no explanation as to any of the limitations it addressed.

---

[2] The time spanning June 3, 2021 to December 12, 2022, covered the majority of the relevant period between Plaintiff's alleged onset date of March 31, 2022, through the date of the ALJ's decision on February 15, 2023.

The opinion also cited polyarthralgia and associated joint pain which the ALJ found was not a medically determinable impairment given the absence of any objective evidence of the same, a finding Plaintiff does not contest. To the extent the exertional limitations were based on a non-medically determinable impairment, they are not supportable. Further, the visit notes quoted above undermine the suggestion that Dr. Fadeff believed the lung scarring, or any other impairment, was indicative of Plaintiff's exertional capabilities because he relied on Plaintiff's own assessment.

Further, the exertional limitations Dr. Fadeff identified are in some respects at odds with Plaintiff's own estimation of his abilities as expressed elsewhere, such as his function report and hearing testimony. As the ALJ noted, his exertional questionnaire notes an ability to walk a mile without stopping. AR 23. Plaintiff similarly testified at the hearing that he has no difficulty standing and walking. AR 42.

Plaintiff also contends that the ALJ erred with respect to the consistency factor in dismissing probative objective evidence:

> The ALJ's analysis only considered normal findings, including negative chest x-ray findings. (AR 24). Yet, there were numerous abnormal findings that the ALJ failed to address in her rejection of the opinions proffered by Dr. Fadeff. (AR 24). For example, on November 17, 2020, Plaintiff presented to Sandahaphun Hansa, M.D. with a chief complaint of dyspnea upon exertion. (AR 271). Plaintiff endorsed dyspnea with exertion three to four times per week with onset one year prior. (AR 271). X-ray imaging revealed an old cavitary lesion in the left lung field and spirometry revealed minimal bronchodilator response. (AR 271). Following examination, Plaintiff was assessed with dyspnea on exertion, mild intermittent asthma, and coccidiomycosis. (AR 271). Plaintiff was advised to continue taking Albuterol as needed and prescribed BREO Ellipta, a once-daily inhaled asthma treatment. (AR 272). Plaintiff was advised to follow up in six to eight weeks for repeat spirometry. (AR 272)
>
> On January 4, 2021, Plaintiff returned to Dr. Hansa with a chief complaint of dyspnea. (AR 274). Plaintiff endorsed snoring and continued dyspneic and fatigue in daytime. (AR 274). Following examination, Plaintiff was assessed with dyspnea on exertion and obstructive sleep apnea syndrome. (AR 274). Plaintiff was advised to discontinue use of inhaler and undergo a home overnight sleep study. (AR 275). Plaintiff was advised to follow up after study. (AR 275). On March 31, 2021, Plaintiff presented at Dignity Health Medical Group of Bakersfield and was assessed with abnormal transaminases, diabetes, neutropenia, and hypercholesterolemia. (AR

7

289-290). Plaintiff was advised to follow up in three months. (AR 290)

MSJ at 15.

As for the November 2020 exam with the pulmonologist Dr. Hansa, the ALJ discussed the same including Plaintiff's reports of dyspnea on exertion, which was both a reported symptom and a diagnosis. AR 22. However, as the ALJ noted, the respiratory exam at that visit was normal. AR 271 ("respiratory: good air entry bilaterally, no adventitious breath sounds, no discrete wheezing, normal respiratory effort. Lungs are clear to auscultation bilaterally. No wheezes. No rales. No rhonchi."). Nor did the ALJ ignore the diagnosis of asthma as that was 1 of 2 severe impairments the ALJ identified as reflected in numerous records the ALJ cited. The same analysis applies with respect to the January 2021 visit with Dr. Hansa for complaints of dyspnea on exertion, daytime fatigue, and sleep problems, along with associated diagnoses despite the absence of any respiratory abnormalities on exam. AR 274.

Plaintiff emphasizes the contemporaneous x-ray reflecting an old cavitary lesion in the left lung field, and spirometry revealed minimal bronchodilator response. AR 271. As the ALJ noted however, August 2020 and August 2022 chest x-rays were negative. AR 22–23.

Further, the ALJ cited two examinations closer to the alleged onset date. At the February 1, 2021 visit, Plaintiff requested Dr. Fadeff's clearance to return to work because he was asymptomatic. AR 296. At Plaintiff's visit on the alleged onset date of March 31, 2021, Plaintiff reported no shortness of breath, and his respiratory exam was normal. AR 288–89. Thus, as the ALJ explained, "as of his alleged onset date there was no subjective or objective indication of respiratory symptoms that would completely preclude work activity." AR 22. Plaintiff neither acknowledges nor rebuts the ALJ's findings on these points.

Finally, in addition to the objective evidence discussed above, the ALJ provided additional explanation as to why Plaintiff's subjective reports do not support significant exertional limitations,

including: 1- the claimant's repeated report that he only had to use his albuterol inhaler once a week and his medications controlled his symptoms; and 2- that Plaintiff testified that he retired from his previous job not due to his health conditions, but because he didn't want to wear a mask as his employer required because it made breathing more difficult.[3]  AR 22–23.  This explanation applies with equal force to the ALJ's rejection of Dr. Fadeff's opinion, which again, Plaintiff does not rebut.

In sum, Plaintiff establishes no error with respect to the ALJ's rejection of Dr. Fadeff's opinion.

## VI.   Recommendations

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, the recommendation is as follows:

1.   That Plaintiff's motion for summary judgment (Doc. 14) be **DENIED.**

2.   That Defendant's cross-motion (Doc. 18) be **GRANTED.**

3.   That the decision of the Commissioner of Social Security be **AFFIRMED**.

4.   That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

## VII.   Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

---

[3] The ALJ noted that Plaintiff provided the same explanation to Dr. Fadeff whose treatment notes indicate "according to the patient [the claimant] since he has to wear a mask in the workplace he cannot breathe adequately. He feels his symptoms are related to his previous history of valley fever. According to the patient he is unable to perform work of any kind as long as he is wearing a mask" (AR 22, citing Ex. 2F, p. 5).

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 19, 2025**                **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE